**RUPPERT v. UNITED STATES.**

No. M–371.

Court of Claims.

March 7, 1938.

430

Harry Schwartz, of Washington, D. C. (William N. Wood, H. P. Cochran, and C. Leo De Orsey, all of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to the Atty. Gen., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

In this case the plaintiff seeks to recover income and profits taxes paid for the year with the exception of one. The claim is made that the Commissioner erroneously disallowed a part of the deduction for bad debts which it had taken in its return for the year 1918.

The plaintiff was a corporation conducting a brewery business, prior and subsequent to the year in question, and enjoyed a large and extensive trade in the sale of its products. It encouraged and financially assisted the establishment of saloons by advancing financial aid to the owners of these establishments in the purchase of bar fixtures and took from them mortgages on these chattels.

In its return for 1918, plaintiff claimed a deduction from gross income for bad debts of $1,382,471.58, and upon an audit of that return, the Commissioner allowed $462,512.67 of that amount and disallowed the remainder, $919,958.91.

Section 234(a)(5) of the Revenue Act of 1918, 40 Stat. 1077, 1078, provides for a deduction from gross income of "debts ascertained to be worthless and charged off within the taxable year." This provision contains two conditions which must be fulfilled. The first is the ascertainment of worthlessness, and the second is the charging off of the debts, both of which must take place within the taxable year for which the deduction is claimed. There is no question between the parties, and the record clearly establishes that the debts in question were written off during the year 1918. What remains for decision is solely whether the plaintiff has proved by the evidence that the ascertainment of worthlessness of these debts has been established in such a way as to overcome the decision of the Commission-

er that there was not a reasonable justification for the charging off of these accounts as worthless during that year.

■ The record discloses that, as a result of the examination of its books of account, by three of its employees, plaintiff charged off chattel mortgage debts in the amount of $1,761,471.86 as worthless. At the same time plaintiff also wrote off $90,892.64 on account of unsecured loans, bills receivable, and beer accounts, making a total of $1,852,364.50. The total of the chattel mortgage accounts written of consisted of 678 separate accounts, and averaged $2,598.04 for each account. However, of the total amount charged off, plaintiff only claimed a deduction in its return of $1,382,471.58, a difference of approximately $470,000. The record contains no explanation as to why the entire amount of the debts written off as worthless was not claimed as a deduction, and there is no explanation or reason given for this difference, or what became of it, or how it was treated. It is a reasonable presumption, where no explanation is given, that even the plaintiff did not take the ascertainment at face value. Doubtless the prohibition wave which was rolling over the nation at that time was anticipated in arriving at what deduction should be claimed. However, the court will take judicial cognizance of the fact that war-time prohibition did not go into effect until July, 1919, six months after these debts were charged off as "ascertained to be worthless," and that nation-wide prohibition did not go into effect until more than one year thereafter.

■ Upon auditing the returns, the Commissioner allowed $462,512.67, as properly ascertained to be worthless, and disallowed the remainder, $919,958.91. The unsecured loans and the bills receivable and also all debts where the mortgages were foreclosed in 1918 were allowed and a small allowance was made on account of mortgages not foreclosed. The Commissioner's basis for his determination was primarily an allowance of a deduction for the debts in 1918 where the mortgages were foreclosed and a refusal of an allowance of a deduction where the mortgages were not foreclosed until subsequent years. Upon a proper showing, a bad debt may be complete enough for a deduction to be allowed even without foreclosure of a mortgage or without a showing that no more can ever be obtained from the debtor, although in future years something may be obtained on the debt. United States v. S. S. White Dental Manufacturing Company, 274 U.S. 398, 47 S.Ct. 598, 600, 71 L.Ed. 1120. However, there must be a reasonable determination of worthlessness; facts must be apparent that a bona fide examination has been made of the solvency of the debtor or the value of the securities pledged to secure the debt. It is not necessary to be "an incorrigible optimist," as stated by the court in United States v. S. S. White Dental Mfg. Co., supra, but at the same time a taxpayer is not permitted to be a stygian pessimist.

■ The accounts which the plaintiff had at the end of 1918 were uncertain of collection and, as the main witness expressed it, were "probably bad or uncollectible." Nevertheless, we are here dealing with a statute which recognizes only debts which are ascertained to be worthless and a deduction on account of partial worthlessness is not allowable. Congress later permitted partial worthlessness. The record shows many of the debts charged off were far from worthless and collections were made in future years without the necessity of resorting to foreclosure proceedings. Furthermore, plaintiff's course of dealing with these debtors did not show a lack of faith in their ability to pay the loans in full or in part. The mortgages were not foreclosed immediately and the parties remained as customers, and collections were made on account from time to time. The plaintiff continued to deal with these debtors in 1919 and to extend credit to them. Of the amount written off by plaintiff over $550,000 was collected in subsequent years. This fact alone is indicative that there was not a reasonable ascertainment of worthlessness. The record does not disclose that the accounts of each of the debtors were carefully gone over and examined as to the debtors' solvency or as to the collectibility of all or any part from a sale of the chattels secured by the mortgages.

The testimony presents the evidence of the accountant, who had been employed by the plaintiff to audit its books. He testified that, together with the treasurer and the head bookkeeper, he investigated the accounts and "directed" that they be charged off the books as worthless. Neither the bookkeeper nor the treasurer testified and what knowledge they possessed of the solvency of the debtors, or how careful an examination they made of the accounts, the evidence does not disclose. With such a casual ascertainment of the worthlessness

of these accounts, we are in no position to reverse the action of the Commissioner. The evidence is insufficient for us to make a finding of fact that a reasonable ascertainment of worthlessness had been established in 1918.

The plaintiff has suggested that, even if the entire deduction claimed cannot be allowed, a partial allowance should be made, based on the partial collections had in subsequent years in respect to certain accounts. We are dealing with the year 1918 and not with what happened in future years, and therefore this suggestion cannot be entertained. The Commissioner did make allowances in future years on account of debts written off in 1918. Whether he was correct in that action, as a matter of law, we are not now concerned. At least, his course of action indicates a fair dealing by him with the plaintiff, as to which the plaintiff should not complain. The plaintiff having failed by a preponderance of the evidence to overcome the presumption of the Commissioner's determination that a reasonable ascertainment had not been made as to the worthlessness of these accounts, no recovery can be had.

The petition is dismissed. It is so ordered.