PROVIDENCE COAL MINING CO. v. GLENN, Collector of Internal Revenue.

Civ. No. 1497.

United States District Court
W. D. Kentucky, at Louisville.

Jan. 27, 1950.

E. J. Wells, Louisville, Kentucky, attorney for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, Henry L. Spencer, Special Assistants to the Attorney General, David C. Walls, United States Attorney, Matthew O. Henchey, Assistant United States Attorney, Louisville, Kentucky, attorneys for defendant.

SHELBOURNE, District Judge.

On its income tax return for the calendar year 1943, the Providence Coal Mining Company accounted for the sale of a coal tipple, steel rails, wire and other personalty for which it received $24,346.11, from a mine referred to in the evidence as No. 3, which it had operated up to May 1, 1942, as a sale of capital assets and taxable under Section 117(j) of the Internal Revenue Code of 1942, 26 U.S.C.A. § 117(j).

It deducted on its return as bad debts, the sum of $7,447.78, made up of the three following accounts—

| | |
|---|---|
| Gardner Coal Company | $3,981.24 |
| Puducah, Kentucky | |
| Gateway Coal Company | 2,044.32 |
| Minneapolis, Minnesota | |
| Winter Coal Company | 1,422.78 |
| Memphis, Tennessee | |

Taxpayer's return was later audited by the Department of Revenue. The Commissioner determined that the sale of personalty was taxable as ordinary income. He disallowed the deduction of the accounts as bad debts and included in taxable income for 1943, $841.14, balance of an account called in the evidence "unclaimed payroll account".

The additional tax for 1943 as determined by the Commissioner was collected June 8, 1946 by assessment.

Plaintiff filed its claim for refund July 12, 1946. May 19, 1948, the Commissioner rejected the claim and on June 11, 1948, plaintiff filed this action to recover the tax with interest.

The case was tried to the Court without a Jury December 5, 1949.

976

## Findings of Fact

1. Plaintiff was organized as a corporation about January 1, 1917 and took over the assets of the Providence Coal Company. The predecessor company was organized about 1888. From 1917 up to May 1, 1942, plaintiff operated mine No. 3.

In 1940, the coal to be mined from No. 3 was becoming exhausted and in that year plaintiff purchased a mine several miles distant from No. 3, which was fully equipped. May 1, 1942, it mined the last coal from No. 3, which operation consisted in withdrawing from the mine the pillars which in previous years had been left to support the surface. It had no need for the tipple, mining machinery parts, motors, armatures and railroad rails with which No. 3 was equipped and beginning January 1, 1943, it began to sell this equipment, the sale of which, after deducting costs of sale, left $24,346.11 net realized from said assets.

2. The unclaimed payroll account accumulated in the followilng way—

The predecessor corporation, Providence Coal Company, from the beginning of its operation in 1888 up to January 1, 1917, had in the account $499.02, the sums making up this total being represented by accounts payable for labor, which the laborer did not claim and which were never paid, and the remainder of the account—$342.11 —accumulated in the years of plaintiff's operation from 1917 through 1942. Thus, the amount of these two accounts totaled $841.14 January 1, 1943, at which time this amount was paid into surplus.

3. The account of $3,981.24 of the Gardner Coal Company represented the balance on an account which started in 1931 and which continued up to May 1, 1942, when Mine No. 3 was abandoned.

The Gardner Coal Company's coal yard at Paducah, Kentucky, was conducted on the property of the Illinois Central Railroad Company. Mine No. 3 was located on the Illinois Central Railroad at Providence. Luton Mine, which the plaintiff purchased in 1940 and began to operate in 1942, was located on the L. & N. Railroad and no coal mined from the Luton Mine was sold to the Gardner Coal Company.

Gardner Coal Company was a trade name in which F. Gardner conducted his coal business. Gardner died in 1943. He had purchased in the years since 1931 approximately $191,000 in coal and in the year 1940 had purchased approximately $4500 in coal and paid plaintiff subsequently that amount on the account.

After his death in 1943, plaintiff made active investigation and then determined that this account was worthless as Gardner's estate was entirely insolvent.

The account of the Gateway Coal Company started in 1926 and continued through 1941, during which time an aggregate of approximately $136,000 of coal was purchased from plaintiff. In the year 1941, this company purchased $9800 in orders and paid plaintiff on this account $10,000.

The owner and operator of this company was stricken with disease and it was not until 1943 that plaintiff ascertained that this account was worthless.

The Minter Coal Company was located at Memphis, Tennessee. Plaintiff began to sell coal to Minter in 1917 and continued through 1938. At that time the balance on the account was $1422.78. For this amount, it took the note of the Minter Coal Company in 1940. At that time, the owner and operator was engaged in extensive litigation in Mississippi, in which had he been successful, he would have been able to have paid all of his indebtedness. He was not successful. Plaintiff had sold to the Minter Company, coal to the extent of more than $131,000.

Plaintiff did realize on the Gateway Coal Company account $100, that sum having been received on the sale of the account in 1945, after the account had been charged off as worthless in 1943.

4. Counsel for plaintiff and defendant agreed at the trial of the case that of the $841.14 paid to its surplus in 1943, $342.12 was properly included by the Commissioner as ordinary income, that amount having accrued in the account since January 1, 1917.

5. The accounts of the Gardner Coal Company, the Gateway Coal Company and the Minter Coal Company became worthless in 1943. The identifiable event making the Gardner Coal Company account worthless was the death of F. Gardner.

The identifiable event making worthless the Gateway account was the illness of its proprietor, which resulted in the termination of that business. However, $100 of this amount should be included as ordinary income, because the account in the year 1943 had a value of $100.

The identifiable event making the account of the Minter Coal Company valueless occurred in 1943, when its proprietor was unsuccessful in litigation, which left him insolvent.

There is nothing in the record to refute plaintiff's testimony that as to each of the accounts, it made an investigation in 1943, which convinced it in the exercise of a reasonable business judgment that the accounts were worthless.

The evidence is undisputed that it had been vigilant in its efforts to collect the accounts in previous years.

Considering the volume of business done with each of the companies, it would be unfair to value the accounts except from a business and common sense angle.

5. The assets constituting the equipment of No. 3 Mine, from the sale of which resulted the $24,346.11, did not include the stock in trade of the taxpayer and was not property of a kind which would properly be included, or which was included, in the inventory of the taxpayer at the close of the taxable year, nor was it property held primarily for sale in the ordinary course of plaintiff's trade or business, or property used in its trade or business of a character which was subject to the allowance for depreciation provided for in Section 23(*l*) of the Internal Revenue Code, 26 U.S.C.A. § 23*(l)*.

### Conclusions of Law

I. The Commissioner erred in making an assessment against the plaintiff based upon his disallowance of the sum of $7347.78, evidenced by the indebtedness to plaintiff from the Gardner Coal Company, the Gateway Coal Company and the Minter Coal Company.

II. The Commissioner erred in the assessment of taxes against the plaintiff based upon $499.02, the amount of the unclaimed payroll account, as of January 1, 1917.

III. The Commissioner did not err in the assessment which included as income of plaintiff, $342.12, in the year 1943, on account of the payment to its surplus of $342.12 from the account of the unclaimed payroll.

IV. The sale by plaintiff of the personal assets constituting the equipment from Mine No. 3 was a sale of capital assets and the Commissioner erred in assessing against plaintiff income taxes for 1943, based upon his classification of the net amount of said sales as ordinary income.

V. Plaintiff is entitled to recover the amount of taxes paid by him based upon the aforesaid erroneous assessment by the Commissioner, with interest as allowable by law.

Judgment in accordance herewith will be tendered by Counsel for plaintiff, upon notice to defendant's Counsel.